IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02491-KLM

ROSEANN AUSTIN,

    Plaintiff,

v.

CHILDREN'S HOSPITAL COLORADO,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#36][1] (the "Motion"). Plaintiff filed a Response [#37] in opposition to the Motion, and Defendant filed a Reply [#38]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#36] is **DENIED**.[2]

**I. Background**

Plaintiff initiated this action on October 18, 2017, alleging that Defendant, Plaintiff's former employer, discriminated against her on the basis of a disability in violation of the

---

[1] "[#36]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c), this case has been referred to the undersigned for all purposes. *See* [#37].

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.* *See Compl.* [#3].[3] Plaintiff's Complaint and Jury Demand [#3] (the "Complaint") does not state a specific cause of action. However, Plaintiff claims that Defendant violated the ADA, 42 U.S.C. § 12112, by failing to reasonably accommodate her recovery from shoulder surgery in not giving her reasonable leave and not allowing her to return to work under her doctor's restrictions. *Id.* ¶ 30. For this alleged violation, Plaintiff seeks back pay and front pay, compensatory damages, and reasonable attorneys' fees pursuant to 42 U.S.C. § 12112. *Id.* ¶ 31.

Discovery in this case concluded on September 6, 2018, and Defendant filed the present Motion [#36] on September 18, 2018. In the Motion [#36], Defendant argues that "Plaintiff is unable to demonstrate a triable issue of fact as to the first element of a prima facie case of disability discrimination -- that Plaintiff was in fact a 'disabled person' under the ADA." [#36] at 2. Therefore, according to Defendant, summary judgment "must be granted in favor of [Defendant] as to Plaintiff's claim that she was discriminated against in violation of the ADA." *Id.*

## II. Material Facts

Plaintiff contests only one paragraph in Defendant's "Statement of Material Facts" section of the Motion [#36]. *Response* [#37] at 1. Plaintiff further states that "the facts regarding [D]efendant's discrete issue (Did [Plaintiff] suffer from an ADA disability?) are

---

[3] Plaintiff's Complaint and Jury Demand [#3] initially named "Pediatric Care Network, Children's Hospital Colorado LLC, d/b/a Children's Hospital" as Defendant. On February 23, 2018, the Parties moved to substitute Defendant Children's Hospital Colorado as the proper Defendant in this case which the Court granted by Minute Order [#30] on March 9, 2018. *See Joint Motion to Substitute Party* [#23].

generally undisputed." *Id.* at 2. Therefore, the Court incorporates Defendant's "Statement of Material Facts" herein unless otherwise noted.

**A.     Plaintiff's Employment with Defendant**

Defendant is a private, not-for-profit pediatric healthcare network and children's hospital. *Def.'s Ex. 1, Aff. of Jennifer Darmofal* (the "Darmofal Aff.") [#36-1] ¶ 2. Plaintiff began her employment with Defendant as a Clinical Nurse II in the Post-Anesthesia Care Unit ("PACU") on or about April 1, 2008. *Compl.* [#1] ¶ 5; *Def.'s Ex. 2, Depo. of Plaintiff Roseann Austin* (the "Austin Depo.") [#36-2] at 27:2-8.

As a Clinical Nurse II in the PACU, Plaintiff's job duties included monitoring patients coming out of surgery who were still under the effects of anesthesia, including being responsible for their airways, monitoring vital signs, assessing pain levels, and going over information with the parents of the patient. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 30:21-32:25; *Pl.'s Ex. 6, Decl. of Plaintiff Roseann Austin* (the "Austin Decl.") [#37-1] ¶ 1. Plaintiff's job duties also included holding patients down while they were coming out of anesthesia, and being able to perform CPR on patients if necessary. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 35:1-36:12. Patients in the PACU ranged from the age of zero to eigteen or twenty. *Id.* [#36-2] at 33:25-34:8.

The physical requirements listed in the Job Description for the Clinical Nurse II position in the PACU included carrying, lifting, pulling, pushing, and reaching up to one-third of the time, being able to assist in lifting, transporting and positioning of patients, being able to encounter a patient who falls or loses balance, and being able to lift or exert force of up to 100 pounds, up to one-third of the time. *Def.'s Ex. 1, Darmofal Aff.* [#36-1] ¶ 6; *Ex. A to Darmofal Aff.* [#36-1] at 6-7. Plaintiff agrees that the physical requirements listed above

are accurate but explains that she never had to lift 100 pounds while at work. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 41:5-11; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 2. Plaintiff further explains that her job required little physical exertion except to occasionally hold a child down who was coming out of anesthesia but that this involved downward pressure which did not cause her shoulder any heightened pain. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 2.

**B.     Plaintiff's May 2, 2016 Shoulder Surgery and Subsequent Recovery**

Sometime between 2014 and 2015, Plaintiff began experiencing pain in her right shoulder. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 59:22-60:12; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 3. Plaintiff saw Dr. Jonathan Bravman for her shoulder pain on December 16, 2015, at which time she and Dr. Bravman discussed physical therapy and injections to treat Plaintiff's shoulder. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 61:5-25; 63:15-24. In February 2016, after physical therapy and injections did not result in significant improvement, Plaintiff and Dr. Bravman discussed the possibility of surgery but Dr. Bravman "never said [surgery] was an absolute mandatory thing." *Id.* at 63:25-64:15; 65:21-66:10.

During this time, Plaintiff had no work or medical restrictions and was still able to work and perform all of the essential job requirements of her position as a Clinical Nurse II in the PACU, including lifting, reaching and carrying. *Id.* at 59:22-60:19; 63:5-14; 66:11-23. Plaintiff experienced pain while working but was able to work through it. *Id.* at 68:6-14.

Plaintiff ultimately decided to have surgery on her shoulder, and discussed the timing of her surgery and how much time she would need to be off from work with her supervisor, Regina Hoefner-Notz. *Id.* at 66:24-67:10. In that conversation, Plaintiff and Ms. Hoefner-Notz agreed that Plaintiff would likely be out on leave for at least twelve, but

probably sixteen weeks. *Id.* at 87:10-22. Ms. Hoefner-Notz anticipated that Plaintiff might need leave for up to sixteen weeks based on the fact that another nurse in the unit had just had the same shoulder surgery and was out for approximately that long. *Id.*; *Def.'s Ex. 3, Depo. of Regina Hoefner-Notz* ("Hoefner-Notz Depo.") [#36-3] at 9:25-10:13.

Plaintiff's surgery was initially scheduled for March 28, 2016, but was postponed after Plaintiff came down with the flu. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 69:7-70:23; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 3. Plaintiff states, and Defendant does not dispute, that after recovering from the flu, Dr. Bravman released Plaintiff to return to work on April 1, 2016, with the restriction that Plaintiff not lift more than five pounds and keep her right arm in a sling at all times. *Pl.'s Ex. 8, Dr. Bravman's Note, dated April 1, 2016* [#37-3] at 1. Plaintiff further states that her supervisor did not allow her to return to work prior to her surgery because of these restrictions even though Plaintiff said she could do her job under those restrictions. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 3. Ultimately, Plaintiff did not return to work between March 28, 2016, and her rescheduled surgery date of May 2, 2016. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 83:24-84:1.

On May 2, 2016, Plaintiff underwent surgery on her right shoulder, specifically a right shoulder arthroscopy with debridement of undersurface rotator cuff tear, biceps tenodesis, distal clavicle resection and subacromial decompression. *Id.* at 84:7-23; *Def.'s Ex. 4, medical records from University of Colorado Hospital ("uchealth")*, [#36-4] at 13-16; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 5. Plaintiff's preoperative diagnoses were a right partial versus focal full-thickness rotator cuff tear, right shoulder biceps tendinitis with subluxation, right shoulder AC arthrosis and right should subacromial bursitis. *Def.'s Ex. 4, medical records from uchealth* [#36-4] at 12-13.

There were no complications during Plaintiff's May 2, 2016 surgery. *Id.* at 13. For the first six weeks after the surgery, Plaintiff had to wear a sling over her right arm and she could not use that arm for any reason. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 84:24-85:20; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 5. Three days after her surgery, Plaintiff started attending physical therapy sessions once or twice a week, which lasted for at least six weeks. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 85:21-86:13. Plaintiff does not dispute that she started physical therapy three days after her surgery but explains that she was unable to move her shoulder on her own for at least six weeks. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶¶ 4-5. The physical therapist moved Plaintiff's arm and shoulder so she could regain her range of motion but she herself could not move her arm or shoulder for six weeks. *Id.* ¶ 4.

On May 13, 2016, eleven days after her surgery, Plaintiff returned to see Dr. Bravman for her first postoperative visit. Dr. Bravman noted that Plaintiff was "doing great," "looks great," and that she had no complaints, had started physical therapy, and her pain was under good control. *Def.'s Ex. 4, medical records from uchealth* [#36-4] at 25. According to Dr. Bravman's physical examination, Plaintiff's right shoulder showed "nicely-healing incisions" and she did not have "any biceps cramping or deformity." *Id.*

On July 6, 2016, approximately eight weeks after her May 2, 2016 surgery, Plaintiff was seen again by Dr. Bravman. *Id.* at 26. Dr. Bravman indicated in his notes that Plaintiff stated that "she was doing excellent, though, over the past two weeks or so, she thinks that the shoulder is getting a bit more painful and a bit stiff." *Id.* Dr. Bravman's physical examination of Plaintiff revealed that her shoulder "shows nicely healing incisions," she had no biceps cramping or deformity, and she did have "a bit of limitation of active equal to passive range of motion…." *Id.* Dr. Bravman also noted that "I think that her surgical result

looks good, though I think she is developing a little bit of capsulitis here in the postoperative period. I have discussed continuing with gentle stretching and progression with [physical therapy] as I think this will be time limited and will likely go away." *Id.* Dr. Bravman also noted that Plaintiff could consider an injection if she continued to be bothered by pain. *Id.*

Around this time, ten weeks after her surgery, Plaintiff states that she could barely raise her arm parallel to the ground but began to be able to lift twenty pounds in physical therapy. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 6. Plaintiff felt she could return to work six weeks later on August 3, 2016, although she would be in pain. *Id.* ¶ 7.

**C. Plaintiff's Impairment Lasted Three Months - From May 2, 2016, to August 2, 2016**

Plaintiff's recovery from shoulder surgery lasted three months, from May 2, 2016, to August 2, 2016. *Def.'s Ex. 5, Pl.'s Resps. to Interrogs.* [#36-5] at 2-3; *Def.'s Ex. 2, Austin Depo.* [#36-2] at 54:4-57:25.

On August 3, 2016, Plaintiff obtained a note from Dr. Bravman, which she furnished to Defendant's Human Resources Department, stating that she was released to return to work as of that date "with the following restrictions that are dictated by her pain/discomfort. She should not be required to lift or reach overhead; she should not be required to transfer patients until her strength has increased." *Def.'s Ex. 1, Darmofal Aff.* [#36-1] 7; *Ex. B to Darmofal Aff.* [#36-1] at 12; *Def.'s Ex. 2, Austin Depo.* [#36-2] at 97:20-99:1; 100:10-13; *Pl.'s Ex. 7, Dr. Bravman's Note, dated August 3, 2016* [#37-2] at 1.

Defendant represents that, as of August 3, 2016, Plaintiff could have performed all of the essential functions of her job, including lifting and reaching overhead, and could lift five to ten pounds by working through her pain and discomfort, just as she did prior to her

surgery. *Motion* [#36] at 7; *Def.'s Ex. 2, Austin Depo.* [#36-2] at 99:2-13; 103:1-3; 99:15-22. This is the one statement in Defendant's "Statement of Facts" that Plaintiff contests. *Response* [#37] at 2. Plaintiff disputes the characterization that she could perform "all the essential functions of her job" as of August 3, 2016, given that Dr. Bravman's note stated that Plaintiff "should not be required to lift or reach overhead." *Id.* at 2; *Pl.'s Ex. 7, Dr. Bravman's Note, dated August 3, 2016* [#37-2] at 1. Plaintiff states that, as of August, she could not reach overhead but "that this work restriction was meaningless because she never reached overhead." *Response* [#37] at 2; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 7; *Def.'s Ex. 2, Austin Depo.* [#36-2] at 99:2-13. However, Plaintiff also states that, as of August 3, 2016, she could not reach her hand above her head or around her back. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 7. Therefore, Plaintiff states that she could not remove her shirt or fasten her bra as she had done before. *Id.* According to Plaintiff, her shoulder's normal flexibility and strength did not return until eighteen months after the surgery. *Id.*

Defendant terminated Plaintiff on August 16, 2016. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 116:11-13. On August 26, 2016, Plaintiff had an appointment with Dr. Bravman, at which time he released her to return to work with no restrictions, although she had by that time been terminated from her job with Defendant. *Id.* at 93:1-18; 119:19-120:24; *Def.'s Ex. 4, medical records from uchealth* [#36-4] at 27. Dr. Bravman's notes state that Plaintiff is "doing ok," "[s]he really feels much better," and that "her biggest complaint is that she has had a significant problem with work. She has now lost her job." *Def.'s Ex. 4, medical records from uchealth* [#36-4] at 27. Dr. Bravman also noted that Plaintiff's "right shoulder shows full range of motion," "[s]he has regained her motion very nicely," and while she still has a little bit of stiffness, there is no pain. *Id.* Dr. Bravman's impression was that

Plaintiff had "[m]ild adhesive capsulitis previously, now resolved and resolving. Clinically doing well." *Id.* Dr. Bravman also noted that Plaintiff "overall . . . looks actually quite excellent," and that he thought "she has made very nice progress, certainly in regard to motion." *Id.*

While Plaintiff does not have "complete memory" of her August 26, 2016 appointment with Dr. Bravman, his notes are consistent with her memory of that appointment and she has no reason to believe that his notes are incorrect. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 120:25-124:13.

### III. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should enter if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the

nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of her claim such that a reasonable jury could find in her favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence, which the Court views in the light most favorable to her. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [her] case or a denial of an opponent's allegation" or it will be disregarded. See 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>
> . . .
>
> (3) Materials Not Cited. The court need consider only the cited materials, but

it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## IV. Analysis

The ADA prohibits discrimination in the workplace "on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination claims generally follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under that analysis, a plaintiff carries the burden of raising a genuine issue of material fact on each element of [her] prima facie case. If plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. If defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual.

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (citations omitted).

To establish a prima facie case of discrimination under the ADA, Plaintiff must show (1) she satisfies one or more prongs of the "disability" definition in 42 U.S.C. § 12102(1), quoted below; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) she suffered discrimination as a result of her disability. *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).

In the Motion [#36], Defendant solely contests Plaintiff's ability to raise a genuine issue of material fact as to the first element of her prima facie case, i.e. whether she had

a "disability" as defined in the ADA. [#36] at 10. A "disability" is defined in the ADA as either "(A) a physical or mental impairment that substantially limits one or more major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). In this case, Plaintiff claims she had an "actual disability" under sub-provision (A), not that she had a record of such an impairment, nor that she was regarded as disabled by Defendant. *Compl.* [#3] ¶ 6. Therefore, the sole issue presented before the Court is whether Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether her recovery from shoulder surgery qualifies as "a physical . . . impairment that substantially limits one or more major life activities" pursuant to 42 U.S.C. § 12102(1)(A).

To demonstrate an actual disability under 42 U.S.C. § 12102(1)(A), Plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (citation omitted).[4] "Whether [Plaintiff] has met the first two requirements are questions of law for the [C]ourt. But whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012) (quoting *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). The Court will address each requirement below.

**A.    Recognized Impairment and Major Life Activities**

For purposes of its Motion [#36], Defendant apparently concedes that Plaintiff had

---

[4] "An individual's disabled status is determined at the time of the adverse action." *Anderson v. Guar. Bank & Tr. Co.*, No. 14-CV-01508-NYW, 2015 WL 5915366, at *10 (D. Colo. Oct. 9, 2015).

a recognized impairment and identified an appropriate major life activity to satisfy the first two elements in demonstrating her actual disability. Defendant states that:

> Accepting Plaintiff's description of her recovery from her shoulder surgery as true for purposes of this motion, including the fact that she was impaired in the use of her arm during her three-month recovery period, one may conclude that Plaintiff's major life activities of lifting and reaching were impaired to some degree or another.

*Motion* [#36] at 10-11.

The Court agrees. Although the ADA does not define the term "physical or mental impairment," a regulation promulgated by the Equal Employment Opportunity Commission (EEOC) defines the term to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological [or] musculoskeletal…." 29 C.F.R. § 1630.2(h)(1). Here, it is undisputed that Plaintiff's impairment was related to her recovery from shoulder surgery which is a condition affecting Plaintiff's musculoskeletal system. Accordingly, the Court finds that Plaintiff had a physical impairment to her left shoulder. *See O'Connell v. Onondaga Cty.*, No. 509CV364FJSATB, 2012 WL 12895022, at *4 (N.D.N.Y. Feb. 9, 2012) (finding that a loss in use of the plaintiff's shoulder "qualifies as a 'physical impairment' within the meaning of the ADA since it is a physiological disorder affecting the musculoskeletal system."). With respect to "major life activities," the ADA as amended defines that term to include "caring for oneself, performing manual tasks," "lifting," and "working." 42 U.S.C. § 12102(2)(A). In this case, it is undisputed that Plaintiff's alleged disability affected the major life activity of lifting, satisfying the second element of the "actual disability" definition.

Therefore, the Court finds that Plaintiff has identified a recognized impairment and major life activity to satisfy the first two elements in demonstrating her actual disability

under the ADA, 42 U.S.C. § 12102(1)(A).

## B. Substantial Limitation

With respect to the above stated elements, Defendant's sole argument is that Plaintiff's "temporary impairment [ ] was not sufficiently severe to *substantially limit* one or more of her major life activities." *Motion* [#36] at 10 (emphasis added). Plaintiff counters that, given the broad construction of the "substantially limit" standard, sufficient evidence exists for a jury to find that her shoulder recovery substantially limited her major life activity of lifting. *See generally Response* [#37] at 4-14. Although this case poses a close call, the Court ultimately agrees with Plaintiff.

As stated above, "whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Sanchez*, 695 F.3d at 1178 (quoting *Carter*, 662 F.3d at 1142; *see also Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 657 (10th Cir. 2014); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). To determine whether Plaintiff produced sufficient evidence for a reasonable jury to find that her shoulder recovery substantially limited her ability to lift, the Court looks to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) ("ADAAA"), and the EEOC regulations implementing the ADAAA, 16 C.F.R. pt. 1630. *See Wisler v. Sonnenalp Properties, Inc.*, No. 15-CV-02609-CMA-GPG, 2017 WL 5990096, at *5 (D. Colo. July 12, 2017).

The ADAAA went into effect on January 1, 2009, and was enacted "with the explicit purpose of broadening the protections of the [ADA] and rejecting certain Supreme Court law interpreting the ADA's definition of disability." *Marsh v. Terra Int'l (Oklahoma), Inc.*, 122 F. Supp. 3d 1267, 1276-77 (N.D. Okla. 2015) (citing Pub.L. No. 110-325, 122 Stat. 3553);

*see Crowell*, 572 Fed. Appx. at 658 (quoting 42 U.S.C. § 12102(4)(A)) which states that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter"); *see Carter*, 662 F.3d at 1144 ("Congress amended the ADA in 2008 to correct what it viewed as an overly restrictive interpretation of the statute's terms that had been adopted by the Supreme Court in [*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)].") (internal quotation marks omitted); *Allen v. SouthCrest Hosp.*, 455 Fed. Appx. 827, 834 (10th Cir. 2011) (discussing the "more favorable definition of disability as clarified by the [ADAAA] and applied in the new regulations promulgated under the ADAAA"). As to the "substantial limitation" requirement, the ADAAA "created a broader definition of disability to protect more individuals, by . . . directing courts to interpret 'substantial limitation' broadly in favor of coverage." *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 545 n.16 (10th Cir. 2014).

"In turn, EEOC regulations now provide that the term 'substantially limits' is to be construed broadly in favor of coverage and is not meant to be a demanding standard." *Crowell*, 572 F. App'x at 658 (citing 29 C.F.R. § 1630.2(j)(1)(i) which mandates that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA[,] [and that] '[s]ubstantially limits' is not meant to be a demanding standard"); *see also Marsh*, 122 F. Supp. 3d at 1276-77 (discussing the "water[ed] down" standard for whether an impairment substantially limits a major life activity). Specifically, EEOC regulations provide that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). The

impairment need merely "substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* In sum,

> The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

*Id.* § 1630.2(j)(1)(iii). With the above in mind, the Court addresses the arguments raised by Defendant's Motion [#36].

The crux of Defendant's argument is that, even under the broader construction of the ADAAA, Plaintiff's shoulder recovery (impairment) cannot be found "substantially limiting" given its short duration of three months and lack of any long-term impact. In support, Defendant first cites to the appendix of the EEOC regulations which provides the following hypothetical: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." 29 C.F.R. § 1630.2(j)(1)(ix) (app.). Defendant argues that Plaintiff's circumstance does not fit this hypothetical, apparently because "several months" cannot equate to three months. *Motion* [#36] at 14. Whether this is true is simply a matter of interpretation as illustrated by the fact that Plaintiff cites the same exact excerpt in support of *her* position. *Response* [#37] at 7. Regardless, reading the appendix as a whole, the above hypothetical is clearly used to demonstrate that an impairment lasting fewer than six months can still be "substantially limiting" under the ADA as amended. 29 C.F.R. § 1630.2(j)(1)(ix) (app.).

Defendant also cites cases in the Tenth Circuit to demonstrate that, typically,

"temporary disabilities do not substantially limit a major life activity or trigger protections of the ADA." *Motion* [#36] at 14-15. While certain statements from these cases do provide some support for that proposition, the Court is not inclined to follow the decisions for two reasons. First, as Plaintiff notes, a majority of these decisions involved pro se plaintiffs who, in many instances, failed to file any response to the motion for summary judgment pending before the court. *See Anderson v. Guar. Bank and Trust Co.*, 2015 WL 5915366, at *11 (D. Colo. Oct. 9, 2015) (holding pro se plaintiff, who did not file a response to the motion for summary judgement, failed to identify a major life activity); *Morgan v. Goodwill Indus. of Denver, Inc.*, 2013 WL 6728777, at *5-6 (D. Colo. Dec. 20, 2013) (same); *Peoples v. Langley/Empire Candle Co.*, 2012 WL 171340, at *2-3 (D. Kan. Jan. 12, 2012) (pro se plaintiff). Second, and more importantly, these courts heavily relied on pre-ADAAA caselaw in finding temporary impairments to not be substantially limiting. *See Foster v. Mtn. Coal Co.*, 2014 WL 7330806, at *10, 10 (D. Colo. Dec. 22, 2014), *rev'd*, 830 F.3d 1178 (10th Cir. 2016) (relying on pre-ADAAA decisions to find a temporary disability does not meet the standards of the ADA); *Morgan*, 2013 WL 6728777, at *4-5 (relying on *Toyota Motor*, 534 U.S. 184 (2002), and other pre-ADAAA decisions in stating that a person is not disabled where the impairment is temporary); *Peoples*, 2012 WL 171340, at *2 (relying on pre-ADAAA decisions in stating that a temporary disability while recuperating from surgery is generally not a disability under the ADA).

Moreover, as Defendant concedes, there is a recent decision in this district which found that a "temporary impairment" does constitute a disability. *Motion* [#36] at 15 n.5 (citing *Wisler*, 2017 WL 5990096 (D. Colo. July 12, 2017)). In *Wisler*, the plaintiff suffered from a blister on his right foot which caused him to work off his feet for two weeks and wear

a weight-bearing boot for fewer than four months until his foot healed.  *Wisler*, at *2.  Although the court ultimately granted the defendant's motion for summary judgment on other grounds, the court held that a jury could reasonably conclude that the plaintiff's impairment was substantially limiting based on these facts.  *Id.* at *6.  In doing so, the court acknowledged the ADAAA's "broad and generous standard," citing the legislative history and EEOC implementing regulations referred to above.  *Id.* at *5-6.

Although Defendant argues that *Wisler* is in the distinct minority of decisions on whether temporary impairments can be substantially limiting, that does not appear to be the case.  Indeed, the decision Defendant cites for this argument discusses the differing authority on whether a temporary impairment, like a broken arm, can be substantially limiting.  *See Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1064-65 (W.D. Ark. 2017), *reconsideration denied*, No. 5:15-CV-05098, 2017 WL 772913 (W.D. Ark. Feb. 27, 2017).  While *Orr* does cite cases where broken arms and similar injuries were found to not be disabilities under the ADA, it also noted that "some courts have found that, post-ADAAA, comparable temporary impairments do constitute disabilities."  *Id.*  Other decisions reflect this fact.  *See e.g.*, *Henson v. Amerigas Propane, Inc.*, No. CIV-15-163-RAW, 2016 WL 3190220, at *4 (E.D. Okla. June 7, 2016), *aff'd*, 681 F. App'x 697 (10th Cir. 2017) (declining to grant summary judgment for defendant on the argument that plaintiff's "non-severe, temporary" hand injury was not substantially limiting); *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330-31 (4th Cir. 2014) (holding that a temporary impairment can be substantially limiting); *Miller v. Coca-Cola Refreshments USA, Inc.*, 2018 WL 1456502, *11 (W.D. Pa. 2018) (finding lifting restriction for three months to be substantially limiting); *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 881 (N.D. Ill. 2014) (finding plaintiff's

hernia to be substantially limiting although temporary); *Vanhorn v. Hana Grp., Inc.*, 979 F. Supp. 2d 1083, 1093-94 (D. Haw. 2013) (collecting cases that found a genuine issue of material fact on the issue of disability where the impairment was of short duration).

In this case, the Court must ultimately be mindful that the term "substantially limits" is not meant to be a demanding standard and, whether that standard is met, is ordinarily a question of fact for the jury. *See Crowell*, 572 F. App'x at 658; *Sanchez*, 695 F.3d at 1178. Plaintiff has presented evidence that she could not use her arm for any reason for six weeks after her surgery. *Def.'s Ex. 2, Austin Depo.* [#36-2] at 84:24-85:20; *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 5. She also provides evidence that her recovery lasted three months, during which time she experienced pain and discomfort and was under lifting restrictions prescribed by her doctor. *Def.'s Ex. 5, Pl.'s Resps. to Interrogs.* [#36-5] at 2-3; *Def.'s Ex. 2, Austin Depo.* [#36-2] at 54:4-57:25; 97:20-99:1; 100:10-13; *Def.'s Ex. 1, Darmofal Aff.* [#36-1] ¶ 7; *Ex. B to Darmofal Aff.* [#36-1] at 12. At the time of her termination, Plaintiff could not reach her hand above her head or around her back and thus could not remove her shirt or fasten her bra as she had done so before. *Pl.'s Ex. 6, Austin Decl.* [#37-1] ¶ 7. Viewing these facts in a light most favorable to Plaintiff as the Court must here, and construing the evidence broadly in favor of expansive coverage as required by the ADAAA, the Court finds that a jury could reasonably find that Plaintiff's shoulder recovery substantially limited her ability to lift as compared to most people in the general population.

Accordingly, the Court concludes that Plaintiff has satisfied the three elements to demonstrate her actual disability and establish her prima facie case of discrimination under the ADA. In short, the Court finds that summary judgment is inappropriate as to whether

Plaintiff was disabled within the meaning of the ADA.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Defendant's Motion for Summary Judgment [#36] is **DENIED**.

Dated:  December 13, 2018

BY THE COURT:

*[signature]*

Kristen L.  Mix
United States Magistrate Judge